1999 UT 5

**Clare T. MORSE, Plaintiff,**

v.

**Lynn K. PACKER, Defendant and Appellant,**

and

**Timothy M. Willardson, Real Party in Interest, and Appellee.**

No. 970531.

Supreme Court of Utah.

Jan. 22, 1999.

Lynn Kenneth Packer, Farmington, pro se Appellant.

Timothy Miguel Willardson, Sandy, and Michael S. Eldrege, Orem, for Appellee.

DURHAM, Associate Chief Justice:

¶ 1 Appellant Lynn K. Packer appeals from a district court order denying rule 11 sanctions against Attorney Timothy M. Willardson. We reverse and remand this case to the district court for further proceedings consistent with the standard articulated in this opinion.

¶ 2 In 1996, Packer—a freelance reporter—continued his ongoing investigation into the business activities of Jeril Winget and Winget's father-in-law, Paul H. Dunn. Packer was preparing a news story for the *Private Eye Weekly,* intended to be a follow-up story to one Packer had written in 1992. Through his inquiries, Packer learned that both Winget and his business partner, Clarence T. Morse, were involved in various business transactions ostensibly beset with problems.

¶ 3 Concerned that Packer's actions were irreparably harming his client's business ventures, Timothy Willardson—Morse's attorney—sent Packer a letter requesting that he "cease and desist from doing anything to discredit the integrity, honesty, or reputation" of Morse. Believing that this request had been ignored, Willardson subsequently filed a defamation lawsuit against Packer on Morse's behalf. Morse alleged that Packer's persistent probings into Morse's financial dealings "caused him to lose interim financing for a project known as Tonga 2000." Morse asserted below that this loss was due, in part, to "false and defamatory statements" Packer made to several of Morse's business associates. Morse further asserted that Packer misrepresented himself to Morse's business associates by claiming to be part of a "fraud investigation team."

¶ 4 On January 27, 1997, Morse moved for a temporary restraining order (TRO) to prohibit Packer from publishing his article. The district court held a TRO hearing on February 5, found that the plaintiff had failed to establish a basis for obtaining a restraining order, and denied the motion.

¶ 5 On February 20, Packer filed a motion for rule 11 sanctions against Willardson. He alleged that Willardson had not made a reasonable inquiry to verify that the complaint filed on Morse's behalf was well-grounded in fact. Packer's article was subsequently published on February 27 as the cover story in the *Private Eye Weekly.*

¶ 6 On March 14, 1997, Packer moved for a rule 11 hearing and Willardson withdrew as Morse's attorney. On April 11, 1997, the

trial court held that the rule 11 motion was premature and should be deferred until the underlying defamation case was resolved. On May 27, 1997, Willardson filed an affidavit in connection with the motion. In this affidavit, he asserted that he had relied on his client, Morse, to provide the information necessary to satisfy a reasonable inquiry requirement. He further identified various individuals who could substantiate the allegations in the complaint.

¶ 7 On July 21, 1997, Packer filed a motion for summary judgment in the defamation action. The court granted this motion on August 18 because plaintiff's new counsel "failed to respond to the Motion within 10 days as required by rule 4–501(1)(b)." Having decided the underlying defamation issue by dismissing the claim, the trial court heard oral argument on the rule 11 motion on September 5, 1997. At this hearing, Willardson's attorney argued that the complaint was filed in good faith, emphasizing that Morse had enjoyed a long-standing relationship with Willardson's firm.

¶ 8 The district court denied the motion for rule 11 sanctions. The order, in full, reads as follows:

This matter came before the court for hearing on Defendant's rule 11 Motion for Sanctions. Having heard argument on the matter and having received and considered Defendant's Motion, together with memoranda in support of and in opposition to the Motion, the Court makes the following Order:

### ORDER

Defendant's Motion for Sanctions is hereby DENIED.

In denying the motion for rule 11 sanctions, the district court did not make any findings on the record. Packer appealed the district court's denial of rule 11 sanctions to this court.

¶ 9 Rule 11 of the Utah Rules of Civil Procedure reads, in relevant part:

(b) ... By presenting a pleading, written motion, or other paper to the court ... an attorney or unrepresented party is certifying that to the best of the person's knowl-

edge, information, and belief, formed after an inquiry reasonable under the circumstances,

(1) it is not being presented for any improper purpose ...

(2) the claims, defenses, and other legal contentions therein are warranted ... [and]

(3) the allegations and other factual contentions have evidentiary support....

(c) [T]he court may ... impose an appropriate sanction upon the attorneys, law firms, or parties that ... are responsible for the violation.

Utah R. Civ. P. 11(b) & (c).

¶ 10 In *Barnard v. Sutliff*, we enunciated the standard of review for evaluating the imposition of rule 11 sanctions. We articulated a three-tiered approach as follows: (1) findings of fact are reviewed under the clearly erroneous standard; (2) legal conclusions are reviewed under the correction of error standard; and (3) the type and amount of sanction to be imposed is reviewed under an abuse of discretion standard. *See Sutliff*, 846 P.2d 1229, 1234 (Utah 1992). This court held that such an approach effectively

uses understood standards of review, accords appropriate discretion to the trial judge in making the difficult judgment as to what an appropriate sanction may be, upholds findings of fact unless contrary to the clear weight of the evidence, and preserves the role of the appellate court in defining what constitutes a violation of the legal standards set by Rule 11.

*Id.* at 1235.

¶ 11 The first tier of this approach requires that findings of fact be reviewed using the clearly erroneous standard. *See id.* at 1234. This standard affords great deference to the trial court because it is in the best position to "assess ... the witnesses and to gain a sense of the proceedings as a whole." *Valcarce v. Fitzgerald*, 961 P.2d 305, 314 (Utah 1998)

¶ 12 The second tier requires that legal conclusions, including whether rule 11 has actually been violated, be reviewed for legal correctness. *See Sutliff*, 846 P.2d at

1234. Under this standard, " 'correctness' means that the appellate court decides the matter for itself and does not defer in any degree to the trial judge's determination of law." *State v.Pena,* 869 P.2d 932, 936 (Utah 1994).

¶ 13 Rule 11 of the Utah Rules of Civil Procedure requires that when a court imposes sanctions, "the court shall describe the conduct determined to constitute a violation of this rule and explain the basis for the sanction imposed." Utah R. Civ. P. 11(c)(3). We hold today that the inverse to this rule also holds. When denying a rule 11 motion for sanctions, a trial court must likewise describe the conduct constituting a basis for the denial. In other words, there should be findings on the record, or other appropriate explanation of the trial court's rationale, that will enable the appellate courts to apply the *Sutliff* standard.

¶ 14 Application of the *Sutliff* standard to the case in its present posture is not possible because of the lack of any meaningful explanation supporting the district court's order denying sanctions. We hold that application of the *Sutliff* analysis requires trial courts to include findings in the record, or other appropriate explanation, when sanctions are denied under rule 11. We therefore remand this case to the district court for the entry of an order more fully explaining the trial court's rationale in denying sanctions so that we may conduct an appropriate review.

Chief Justice HOWE, Justice ZIMMERMAN, Justice RUSSON, and Judge ORME concur in Associate Chief Justice DURHAM's opinion.

Having disqualified himself, Justice STEWART does not participate herein; Judge GREGORY K. ORME, Court of Appeals, sat.